UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELEANOR F. PALMISANO,<br><br>　　　　　Plaintiff,<br>　v.<br><br>IMMUNOMEDICS, INC., BEHZAD AGHAZADEH, BARBARA DUNCAN, ROBERT AZELBY, PETER BARTON HUTT, CHARLES BAUM, KHALID ISLAM, and SCOTT CANUTE,<br><br>　　　　　Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction announced on September 13, 2020, pursuant to which Immunomedics, Inc. ("Immunomedics" or "the Company") will be acquired by Gilead Sciences, Inc. ("Gilead").

2. On September 13, 2020, Immunomedics' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Maui Merger Sub, Inc., a wholly-owned subsidiary of Gilead, commenced a tender offer to purchase all of Immunomedics' outstanding common stock for $88.00 per share in cash (the "Tender Offer").

3. On September 24, 2020, in order to convince Immunomedics's stockholders to tender their shares, defendants authorized the filing of a materially incomplete and misleading

Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Solicitation Statement omits material information with respect to the Tender Offer, which renders the Solicitation Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

5. In addition, the Tender Offer is scheduled to expire one-minute following 11:59 p.m., Eastern Time, on October 22, 2020 (the "Expiration Time"). It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the Expiration Time so they can properly determine whether to tender their shares.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(d), 14(e) and 20(a) of the 1934 Act and Rule 14d-9.

7. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain defendants have received

substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Immunomedics common stock.

10. Defendant Immunomedics is a Delaware corporation and a party to the Merger Agreement. Immunomedics common stock is traded on the NASDAQ under the ticker symbol "IMMU."

11. Defendant Bezhad Aghazadeh is Chairman of the Board of the Company.

12. Defendant Barbara Duncan is a director of the Company.

13. Defendant Robert Azelby is a director of the Company.

14. Defendant Peter Barton Hutt is a director of the Company.

15. Defendant Charles Baum is a director of the Company.

16. Defendant Khalid Islam is a director of the Company.

17. Defendant Scott Canute is a director of the Company

## FACTS

18. Immunomedics is a leader in next-generation antibody-drug conjugate (ADC) technology, committed to help transform the lives of people with hard-to-treat cancers. The Company's proprietary ADC platform centers on using a novel linker that does not require an enzyme to release the payload to deliver an active drug inside the tumor cell and the tumor microenvironment, thereby producing a bystander effect. Trodelvy, the company's lead ADC, is

the first ADC the FDA has approved for the treatment of people with metastatic triple-negative breast cancer and is also the first FDA-approved anti-Trop-2 ADC.

19.  Gilead is a research-based biopharmaceutical company that discovers, develops and commercializes innovative medicines in areas of unmet medical need. Gilead strives to transform and simplify care for people with life-threatening illnesses around the world. Gilead has operations in more than 35 countries worldwide, with headquarters in Foster City, California.

20.  On September 13, 2020, Immunomedics' Boards caused the Company to enter into the Merger Agreement.

21.  According to the press release announcing the Tender Offer:

**Foster City, Calif. & Morris Plains, N.J., September 13, 2020** – Gilead Sciences, Inc. (Nasdaq: GILD) and Immunomedics (Nasdaq: IMMU) announced today that the companies have entered into a definitive agreement pursuant to which Gilead will acquire Immunomedics for $88.00 per share in cash. The transaction, which values Immunomedics at approximately $21 billion, was unanimously approved by both the Gilead and Immunomedics Boards of Directors and is anticipated to close during the fourth quarter of 2020.

The agreement will provide Gilead with Trodelvy™ (sacituzumab govitecan-hziy), a first-in-class Trop-2 directed antibody-drug conjugate (ADC) that was granted accelerated approval by the U.S. Food and Drug Administration (FDA) in April for the treatment of adult patients with metastatic triple-negative breast cancer (mTNBC) who have received at least two prior therapies for metastatic disease. Immunomedics plans to submit a supplemental Biologics License Application (BLA) to support full approval of Trodelvy in the United States in the fourth quarter of 2020. Immunomedics is also on track to file for regulatory approval in Europe in the first half of 2021.

In the Phase 3 ASCENT study, which was halted early due to efficacy based on the unanimous recommendation of the independent Data Safety Monitoring Committee, Trodelvy significantly improved progression-free survival (PFS) and overall survival (OS) in previously treated patients with advanced mTNBC. Detailed results from this study are expected to be presented at the upcoming European Society for Medical Oncology (ESMO) Virtual Congress 2020.

Beyond mTNBC, Trodelvy is also being studied in an ongoing Phase 3 trial in third line HR+/HER2- breast cancer and a registrational Phase 2 study in bladder cancer. Additional ongoing studies are evaluating the potential of Trodelvy as a treatment

for non-small cell lung cancer and other solid tumor types. Trodelvy is being studied as both a monotherapy and in combination with checkpoint inhibitors and other non-immuno-oncology products by Immunomedics and independent investigators. Additional clinical data for Trodelvy in bladder cancer and other solid tumors will also be presented at ESMO this coming week.

"This acquisition represents significant progress in Gilead's work to build a strong and diverse oncology portfolio. Trodelvy is an approved, transformational medicine for a form of cancer that is particularly challenging to treat. We will now continue to explore its potential to treat many other types of cancer, both as a monotherapy and in combination with other treatments," said Daniel O'Day, Chairman and Chief Executive Officer, Gilead Sciences. "We look forward to welcoming the talented Immunomedics team to Gilead so we can continue to advance this important new medicine for the benefit of patients with cancer worldwide."

"We are very pleased that Gilead recognized the value of Trodelvy – both for the important role it has already begun to play for patients with metastatic triple-negative breast cancer and for its potential to help many other patients with cancer in the future," said Behzad Aghazadeh, MD, Executive Chairman of Immunomedics. "We are excited for the opportunities ahead of us as we join with Gilead to advance our shared mission in defeating cancer. By working with Gilead, we have the opportunity to accelerate our progress and improve care for patients in need of new therapies."

***

**Transaction Terms and Financing**

Under the terms of the merger agreement, a wholly-owned subsidiary of Gilead will promptly commence a tender offer to acquire all of the outstanding shares of Immunomedics' common stock. The $88.00 per share acquisition price represents a 108 percent premium to Immunomedics' closing price on September 11, 2020. Following successful completion of the tender offer, Gilead will acquire all remaining shares not tendered in the offer through a second step merger at the same price as the tender offer.

The consummation of the tender offer is subject to various conditions, including a minimum tender of at least a majority of outstanding Immunomedics shares, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions.

The tender offer is not subject to a financing condition and will be funded through approximately $15 billion in cash on hand, as well as approximately $6 billion in newly issued debt. Gilead expects to retain an investment grade credit rating

following this transaction and this agreement does not alter Gilead's stated capital allocation strategy or its commitment to maintain and grow its dividend over time.

Lazard and Morgan Stanley & Co. LLC are acting as financial advisors to Gilead. Centerview Partners LLC and BofA Securities are acting as financial advisors to Immunomedics. Cowen & Company, LLC also provided advice to Immunomedics. Davis Polk & Wardwell LLP is serving as legal counsel to Gilead and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Immunomedics.

22. The Offer Price is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Tender Offer.

23. It is therefore imperative that the Company's common stockholders receive the material information that defendants have omitted from the Solicitation Statement so that they can meaningfully assess whether to tender their shares.

24. Section 5.03 of the Merger Agreement provides for a no solicitation clause that prevents Immunomedics from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> (a) Except as permitted by this Section 5.03, during the Pre-Closing Period, the Acquired Companies shall not, and shall cause their officers and directors not to, and shall use reasonable best efforts to cause their other Representatives not to, directly or indirectly, (i) continue any solicitation, knowing encouragement, discussions or negotiations with any Persons that may be ongoing with respect to an Acquisition Proposal; (ii) (A) solicit, initiate or knowingly facilitate or encourage (including by way of furnishing non-public information) any inquiries regarding, or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, an Acquisition Proposal (other than discussions solely to clarify the terms and conditions of such proposal or offer), (B) engage in, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person any non-public information in connection with, or for the purpose of soliciting or knowingly encouraging or facilitating, an Acquisition Proposal or any proposal or offer that would reasonably be expected to lead to an Acquisition Proposal (other than to state that the terms of this provision prohibit such discussion), (C) approve, adopt, endorse or recommend or enter into any letter of intent, acquisition agreement, agreement in principle or similar agreement with respect to an Acquisition Proposal or any proposal or offer that would reasonably be expected to lead to an Acquisition Proposal (other than an Acceptable

Confidentiality Agreement) or (D) take any action to exempt any Person (other than Parent and its Subsidiaries) from the restrictions on "business combinations" or any similar provision contained in applicable Takeover Laws or the Company's organizational and other governing documents; (iii) subject to the fiduciary duties of the Board of Directors, waive or release any Person from, forebear in the enforcement of, or amend any standstill agreement or any standstill provisions of any other Contract; or (iv) resolve or agree to do any of the foregoing. As promptly as reasonably practicable (and in any event within two business days) following the date hereof, the Company shall discontinue electronic or physical data room access granted, and request the prompt return or destruction (to the extent provided for by the applicable confidentiality agreement) of all non-public information or documents previously furnished to any Person (other than Parent, its Affiliates and their respective Representatives) that has made or has indicated an intention to make an Acquisition Proposal and all material incorporating such information created by any such Person.

25. In addition, Section 8.03 of the Merger Agreement requires Immunomedics to pay a $732,052,638. "termination fee" to Gilead in the event this agreement is terminated by Immunomedics and improperly constrains the Company from obtaining a superior offer.

26. Defendants filed the Solicitation Statement with the SEC in connection with the Tender Offer. As alleged herein, the Solicitation Statement omits material information, which renders the Solicitation Statement false and misleading.

27. First, the Solicitation Statement omits material information regarding Immunomedics' financial projections.

28. With respect to Immunomedics' financial projections, the Solicitation Statement fails to disclose (i) all line items used to calculate (a) unlevered free cash flow and (b) EBIT, (ii) the risk adjustments made to the projections, and (iii) the un-risk adjusted projections. The Solicitation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material information necessary for Immunomedics stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company. In addition, this information

is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

30. Second, the Solicitation Statement omits material information regarding the analysis performed by the Company's financial advisors Centerview Partners LLC ("Centerview") and BofA Securities, Inc. ("BofA") in connection with the Tender Offer.

31. With respect to *Centerview's Selected Public Company Analysis*, the Solicitation Statement fails to disclose: (i) the individual metrics for the individual companies observed by Centerview in the analysis, (ii) the inputs and assumptions underlying the selection of a multiple range of 4.0x to 6.0x for 2024E revenue multiples, and (iii) the Company's fully diluted outstanding shares. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

32. With respect to *Centerview's Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the individual metrics for the transactions observed by Centerview in the analysis and (ii) Centerview's full basis for applying four-year forward revenue multiple range of 5.0x to 8.0x. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

33. With respect to *Centerview's Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow, (ii) Centerview's full basis for applying the discount rates ranging from 9.0% to 11.0%, (iii) the Company's terminal value, and (iv) Centerview's full basis for assuming that unlevered free cash flow would decline in perpetuity after December 31, 2034 at a rate of free cash flow decline of

30.0% year-over-year for Trodelvy and IMMU-130, increase 5% year-over-year in perpetuity for the Company's SN-38 antibody-drug conjugate platform, and increase 3% year-over-year for other corporate items. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

34. With respect to *Centerview's Analyst Price Target Analysis*, the Solicitation Statement fails to disclose: (i) the price targets observed in the analysis, and (ii) the sources of the price targets observed in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

35. With respect to *Centerview's Premiums Paid Analysis*, the Solicitation Statement fails to disclose the premiums paid in the transactions observed by Centerview in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

36. With respect to *BofA's Selected Public Company Analyses*, the Solicitation Statement fails to disclose: (i) the individual metrics for the individual companies observed by BofA in the analysis, and (ii) the inputs and assumptions underlying the selection of a multiple range of 3.00x to 5.00x for 2024 PoS adjusted public company revenue multiples. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

37. With respect to *BofA's Selected Precedent Transaction Analysis*, the Solicitation

Statement fails to disclose: (i) the individual metrics for the transactions observed by BofA in the analysis and (ii) BofA's full basis for applying CY+4 PoS adjusted transaction revenue multiple range of 4.40x to 6.60x. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

38. With respect to *BofA's Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the estimated value of (a) the gross profit expected to be generated by the Company for Trodelvy in metastatic triple negative breast cancer, (b) the gross profit expected to be generated by the Company for Trodelvy in metastatic urothelial cancer, (c) the gross profit expected to be generated by the Company for Trodelvy in estrogen receptor positive metastatic breast cancer, (d) the gross profit expected to be generated by the Company for Trodelvy in metastatic non-small cell lung cancer, (e) the gross profit expected to be generated by the Company for other Trodelvy indications, (f) the corporate expenses allocated to Trodelvy, (g) the royalties and milestone payment amounts, (h) the gross profit expected to be generated by the Company for IMMU-130, (i) the corporate expenses allocated to IMMU-130, (j) the probability of success adjusted earnings before income taxes allocated to the Company's ADC platform, (k) the unallocated corporate expenses and cash flow items, and (l) the Company group's taxes; (ii) the terminal values for each of these items; (iii) BofA's basis for applying perpetuity growth rates ranging from negative 30.0% to negative 25.0%, 3.0% to 5.0%, and 0.0% to 2.0%; (iv) the individual inputs and assumptions underlying the discount rates ranging from 8.5% to 11.0%; (v) the NOLs and Federal R&D Tax Credits used in the analysis; and (vi) the Company's fully diluted shares. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders

with full and relevant information in considering whether to tender their shares.

39. With respect to *BofA's Analysis Price Target*, the Solicitation Statement fails to disclose: (i) the price targets observed in the analysis, and (ii) the sources of the price targets observed in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

40. With respect to *BofA's Premiums Paid Analysis*, the Solicitation Statement fails to disclose the premiums paid in the transactions observed by BofA in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to Immunomedics stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

41. The omission of the above-referenced material information renders the Solicitation Statement false and misleading.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(e) OF THE EXCHANGE ACT)

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in

connection with any tender offer or request or invitation for tenders[.]

45. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

46. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

47. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Tender Offer as set forth above.

48. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

49. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Tender Offer. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

50. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

51. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

52. Because of the false and misleading statements in the Solicitation Statement, plaintiff is threatened with irreparable harm.

53. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(d) OF THE EXCHANGE ACT AND RULE 14d-9 PROMULGATED THEREUNDER)

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

56. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

57. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

58. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

59. The omissions in the Solicitation Statement are material to plaintiff, and who will be deprived of her right to make a fully informed decision with respect to the Tender Offer if

13

such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**

**(AQGENST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)**

60. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Tender Offer. The Solicitation Statement at issue

contains the unanimous recommendation of the Board to approve the Tender Offer. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

64. In addition, as the Solicitation sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and 14(d) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

67. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer;

B. In the event defendants consummate the Tender Offer, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Solicitation Statement that

does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

   D.  Declaring that defendants violated Sections 14(e) and/or 20(d) of the 1934 Act, as well as Rule 14d-9 promulgated thereunder;

   E.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 7, 2020       **MOORE KUEHN, PLLC**

               */s/Justin Kuehn*
               Justin A. Kuehn
               Fletcher W. Moore
               30 Wall Street, 8th floor
               New York, New York 10005
               Tel: (212) 709-8245
               jkuehn@moorekuehn.com
               fmoore@moorekuehn.com

               *Attorneys for Plaintiff*